```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

JAMES T. CONWAY, III, et al.,   :   CASE NO. 2:05-CV-820
                                :
      Plaintiffs,            :
                                :
  v.                            :   JUDGE SARGUS
                                :
REGINALD WILKINSON, et al.,     :   MAGISTRATE JUDGE KEMP
                                :
      Defendants.            :

<u>REPORT AND RECOMMENDATION</u>

    On September 6, 2005, James T. Conway and his immediate family filed a motion for a temporary restraining order and preliminary and permanent injunction in the United States District Court for the Southern District of Ohio to prevent James T. Conway, a death row inmate, from being transferred from the Mansfield Correctional Institution to the Ohio State Penitentiary in Youngstown, Ohio.  For the following reasons, this Court recommends that the motion for temporary restraining order and preliminary and permanent injunction (doc. #2) be DENIED.

I.

    On September 6, 2005, Conway, on behalf of himself and his immediate family, filed a complaint alleging that the death row inmate visiting restrictions at Mansfield Correctional are significantly different than the visitation restrictions placed on the inmates in the general population, which results in a violation of his Eighth and Fourteenth Amendment constitutional rights.  Before Conway filed this action, he was notified that all the death row inmates were being transferred to the Ohio State Penitentiary in Youngstown, Ohio.  Accordingly, Conway filed a motion for temporary restraining order and preliminary and permanent injunction to enjoin the Ohio Department of Corrections from transferring him.  In this motion, Conway claims that the death row inmate visiting restrictions at the Ohio State

Penitentiary in Youngstown, Ohio are

> as harsh, or worse, than the current visiting facilities in question in the above entitled case. If this move would be allowed to occur, the simple plausible resolution suggested would turn into a vast undertaking that would likely never occur. This is because there are no visiting facilities at the Ohio State Penitentiary that are comparable to general population facilities, and an undertaking to create such facilities would be both time consuming and expensive.

Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction, at p. 2.

The Court is required to weigh four factors in determining whether a party is entitled to a preliminary injunction under Fed. R. Civ. P. 65(a). Those factors are: (1) the likelihood that the party seeking the injunction will succeed on the merits of the claim; (2) the extent to which the party seeking the injunction will be injured unless relief is granted, focusing particularly on the possibility of irreparable injury; (3) whether the injunction, if issued, will cause substantial harm to others; and (4) whether issuance of the injunction is in the public interest. See Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994). No one factor is dispositive. Rather, these four factors must be balanced in determining whether preliminary injunctive relief should issue. In re Delorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985). With these standards in mind, the Court now reviews the facts of record to determine whether preliminary injunctive relief is appropriate. The Court begins with reviewing whether Conway has a likelihood of success on the merits of his claim.

A.

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust administrative remedies before filing suit in

2

the district court.  It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a). The plaintiff-prisoner has the burden of proving that all administrative remedies are exhausted, Baxter v. Rose, 305 F.3d 486, 488 (6th Cir. 2002), and, for proof, documentation must be attached to the complaint.  Brown v. Toombs, 139 F.3d 1102, 1004 (6th Cir. 1999).  Finally, although exhaustion is not jurisdictional, it is a mandatory requirement imposed by statute. Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

    Ohio Administrative Code §5120-9-31 outlines a three-step procedure provided to Ohio inmates if they have grievances concerning any aspect of institutional life, including policies, procedures, conditions of confinement, or the actions of the institutional staff.  Ohio Admin. Code §§5120-9-31(A) and (J). First, within fourteen days of the date giving rise to the complaint, the inmate must file an informal complaint with "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint."  Id. at §5120-9-31(J)(1).  Second, if the inmate is dissatisfied with the informal complaint response, the inmate may file a notification of grievance with the inspector of institutional services.  Id. at §5120-9-31(J)(2).  Finally, if the inmate is dissatisfied with the disposition of the grievance, the inmate may request an appeal to the chief inspector.  Id. at §5120-9-31(J)(3).  All stages of the proceeding require written responses from the Department of Corrections.

    In the instant case, the complaint states that Conway "filed a formal grievance with the chief inspector at the institution. Non-inmate plaintiffs filed appropriate grievance with ODRC."

Complaint at p. 3.  Furthermore, it states that "[p]risoner['s] grievance was dismissed, non-inmate grievance was noted but no action was taken [sic]."  Id.

A review of the record highlights contradictory evidence regarding which steps Conway completed in the grievance process.  In the complaint, Conway states that he filed only "a formal grievance with the chief inspector at the institution," which indicates that he bypassed the first two steps of the grievance process.  Complaint at p. 3.  Contrarily, the defendants state that Conway only filed a grievance with the inspector of institutional services, which suggests that Conway bypassed the first step required by the grievance procedure.  Defendants' Response in Opposition to Plaintiffs' Motion for Immediate Preliminary Injunction at p. 5.  Regardless of which steps Conway may or may not have taken, it is obvious that he failed to exhaust all three grievance requirements outlined in the Ohio Administrative Code.  Moreover, it appears that Conway failed to attach any documentation of proof that he exhausted the administrative remedies available to him with respect to the claims asserted in his complaint.  In fact, Conway did not file *any* documentation with his complaint.  Accordingly, without exhausting all of the administrative remedies as required by 42 U.S.C. §1997e(a), it is unlikely that Conway's claims will be successful on the merits.

B.

Next, this Court must examine the extent to which Conway and his family will be injured unless relief is granted.  The United States Supreme Court and the Sixth Circuit Court of Appeals have made clear that prisoners have limited due process rights under the Fourteenth Amendment of the United States Constitution.  See, e.g.,Meachum v. Fano, 427 U.S. 215 (1976) (holding that transferring a prisoner from one state prison to another is not a

4

violation of the Due Process Clause); <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979)(deference must be given to prisons to maintain institutional security); <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989)(It cannot "seriously be contended in light of our previous cases-that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause."); <u>Spears v. Sowder</u>, 71 F.3d 626, 629-30 (6th Cir. 1995)("It is clear that a prisoner does not have a due process right to unfettered visitation.... A fortiori, a citizen simply does not have a right to unfettered visitation of a prisoner that rises to a constitutional demension.")(citations ommitted).

In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the United States Supreme Court examined whether a prisoner had a procedural due process protection before placement in segregated confinement for 30 days as a result of disruptive behavior.  The Court concluded that there was no liberty interest protecting against a 30-day assignment to segregated confinement because it did not present a dramatic departure from the inmates regular prison conditions. <u>Id.</u> at 485.  The Court noted that states may create liberty interests in certain circumstances,

> [b]ut these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Id.</u> at 483-84.

Applying the <u>Sandin</u> standard, the United States Supreme Court held that prisoners do have a liberty interest in avoiding assignment to the Ohio State Penitentiary at Youngstown.

5

Wilkinson v. Austin, 125 S.Ct 2384, 2395 (2005).  The Court stated that the living conditions at the Ohio State Penitentiary, which include, for example, a prohibition of almost all human contact and exercise time limited to one hour a day, may not give rise to a due process violation individually, their aggregate impose an atypical and significant hardship within the correctional context.  Id.

In the instant case, however, this Court is not to evaluate the merits of the claim; rather this Court is to examine, for the purposes of this motion, whether this Court should enjoin the Ohio Department of Corrections from transferring Conway from Mansfield to Youngstown.  Conway argues that the visitation restrictions at the Ohio State Penitentiary are "as harsh, or worse, than the current visiting facilities" at the Mansfield Correction Institution.  Beyond the restrictions currently in place for an Ohio death-row inmate during visitation, e.g. belly chains, talking to family members on a phone through glass, lack of intimate contact, no vending machines, lack of day care for children, Conway does not cite any specific examples of how the Ohio State Penitentiary visitation restrictions differ from Mansfield Correctional.  Put simply, unlike Austin where the prisoner detailed stark examples between their current prison and the Ohio State Penitentiary, this Court does not have any evidence that visiting hour restrictions will differ from one prison to the next. Moreover, because Conway is a death row inmate, the State must be afforded some deference in restricting how the prison is secured, which includes protecting prison personnel and visitors, from those prisoners that pose the most danger.  See, e.g., Overton v. Bazzetta, 539 U.S. 126, 133 (2003)(stating that restrictions on visitation by children is a valid interest in order to maintain internal security and protect the child visitors from exposure to sexual or other misconduct or

6

from accidental injury.)  Accordingly, this Court cannot evaluate the extent to which the due process rights of Conway and his family will be injured unless relief is granted.

Conway's Eighth Amendment argument is met with the same disposition.  As the United States Supreme Court has promulgated, a prisoner's Eighth Amendment "cruel and unusual punishment" claim is not successful unless that prisoner is subjected to inhumane prison conditions, deprivation of basic human necessities, or the infliction of pain or injury.  See, e.g., Estelle v. Gamble,429 U.S. 97 (1976); Rhodes v. Chapman, 452 U.S. 337 (1981).  Again, in the case at bar, Conway fails to identify any concrete differences between the visitation restrictions currently in place at Mansfield Correctional versus the restrictions at the Ohio State Penitentiary.  This Court, therefore, cannot examine the extent of Conway's Eighth Amendment injury if he is transferred to Youngstown.

In sum, given the lack of evidence presented in this case, this Court concludes that it is unable to examine the extent to which Conway and his family will be injured unless relief is granted.  Thus, this factor weighs in favor of denying Conway's motion.

C.

Next, this Court turns to whether, the injunction, if issued, will cause substantial harm to others.  The record is unclear as to whether Conway has already been transferred to the Ohio State Penitentiary.  If he has, there may be a monetary harm to the State to transfer Conway back to Mansfield if an injunction was issued.  Moreover, the Ohio Department of Corrections, in its response in opposition to Conway's request for an injunction, notes that there is a class action case currently pending in the United States District Court for the Northern District of Ohio that concerns the transfer of all Ohio

7

death row inmates to the Ohio State Penitentiary at Youngstown. Assuming this to be true, granting an injunction in this instance would harm the Ohio Department of Corrections and Conway because the main issues of Conway's claims are being litigated in the Northern District. If this Court issued an injunction despite the pending litigation, differing results may occur. Accordingly, this factor weighs against issuing an injunction.

D.

Finally, the Court examines whether issuance of the injunction is in the public interest. But for the general interest that the public has in the State maintaining a safe and effective prison system, this factor has little bearing on the case before the Court.

II.

In sum, because the Washington factors weigh in favor of denying plaintiffs' request for an injunction, this Court RECOMMENDS that plaintiffs' motion for temporary restraining order and preliminary and permanent injunction (doc. #2) be DENIED.

PROCEDURE ON OBJECTION

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operate as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 f.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge