IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T. CONWAY, III, et al., | : | CASE NO. 2:05-CV-820 |
| Plaintiffs, | : | |
| v. | : | JUDGE SARGUS |
| REGINALD WILKINSON, et al., | : | MAGISTRATE JUDGE KEMP |
| Defendants. | : | |

## ORDER ADOPTING THE REPORT AND RECOMMENDATION AND DENYING PLAINTIFFS' SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

On October 20, 2005, the Magistrate Judge issued a Report recommending that this Court deny the plaintiffs' motion for temporary restraining order and preliminary and permanent injunction. The injunctive motion requested that this Court prevent Mr. Conway, a death row inmate, from being transferred from the Mansfield Correctional Institution to the Ohio State Penitentiary in Youngstown, Ohio, where, according to the motion, the visitation conditions are "as harsh, or worse, than the current visiting facilities" at Mansfield Correctional Institution. On October 28, 2005, the plaintiffs filed an objection to Magistrate Judge Kemp's Report and Recommendation. For the following reasons, this Court adopts Magistrate Kemp's Report and Recommendation and denies the plaintiffs' motion for temporary restraining order and preliminary and permanent injunction (doc. #2). Additionally, plaintiffs' second motion for temporary restraining order and preliminary and permanent injunction (doc. #10) will be denied.

I.

When objections are received to a Magistrate Judge's Report and Recommendation, the assigned District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. §636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same affects as would a failure to object." Howard v. Secretary of Health and Human Services, 932 F.2d 505, 509 (6th Cir. 1991). In the instant case,

the plaintiffs have made four specific objections.

## II.

In determining whether a party is entitled to a preliminary injunction under Fed.R.Civ.P. 65(a), a court is required to weigh four factors: (1) the likelihood that the party seeking the injunction will succeed on the merits of the claim; (2) the extent to which the party seeking the injunction will be injured unless relief is granted, focusing particularly on the possibility of irreparable injury; (3) whether the injunction, if issued, will cause substantial harm to others; and (4) whether issuance of the injunction is in the public interest. Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994). It is with these standards in mind that this Court will review, *de novo*, the four objections that the plaintiffs raised regarding the Magistrate's Report and Recommendation.

### A.

In the plaintiffs' first objection, the plaintiffs contend that they have a strong likelihood of success on the merits because the Report and Recommendation erroneously concluded that Mr. Conway failed to exhaust all of his administrative remedies. Further, the plaintiffs contend, *arguendo*, that even if Mr. Conway failed to comply with the exhaustion requirements stated in 42 U.S.C. §1997e, the family, all of whom are non-prisoners, may still be successful in their claims because they are not subjected to the exhaustion requirements.

Mr. Conway argues that Ohio Administrative Code §5120-9-31(L), not §5120-9-31(J), is the governing section of the inmate grievance procedure. Under Ohio Administrative Code §5120-9-31(L), Mr. Conway suggests that he successfully exhausted his administrative remedies by filing his grievance about the visitation policy at the Ohio State Penitentiary directly with the Chief Inspector.

Ohio Administrative Code §5120-9-31(L) states that "[g]rievances against the warden or inspector of institutional services must be filed directly to the office of the chief inspector within thirty calender days of the event giving rise to the complaint." A review of the record indicates that Mr. Conway did file his grievance directly with the Chief Inspector. It appears from the complaint, however, that the plaintiffs named both Reginald Wilkinson, the director of the Ohio Department of Rehabilitation and Correction, and Margaret Bradshaw, the warden at Mansfield Correctional, as defendants.

2

Under Ohio Administrative Code §5210-9-31(L), Mr. Conway successfully exhausted all of his administrative remedies in regards to his claims against Warden Bradshaw when Mr. Conway filed his grievance directly with the Chief Inspector. Nevertheless, as the Report and Recommendation states, Mr. Conway failed to exhaust all of his administrative remedies in regards to his claims against Mr. Wilkinson, see Ohio Administrative Code §5210-9-31(J), and, under the Prison Litigation and Reform Act, a prisoner must exhaust all administrative remedies in regards to *each* defendant. See, Burton v. Jones, 321 F.3d 569, 574-575 (6th Cir. 2003)(requiring a prisoner to file a grievance against each person he ultimately seeks to sue); Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003)(same); Curry v. Scott, 249 F.3d 493 (6th Cir. 2001)(same).

This Court reaches a similar disposition in determining whether the non-prisoner plaintiffs have a likelihood of success in arguing a constitutional violation in the manner death-row inmate visitations are conducted. In the instant case, the plaintiffs' complaint states:

> This complaint is filed on behalf of death row inmate James T[.] Conway III, and his family, the rest of the listed plaintiffs. It is concerning how visits are conducted for death row inmates, which are the same, or worse, than visits for Ohio inmates who are under a disciplinary sanction. The inmate is brought out from his cell in belly chains and shackles. Belly chains constrict the movement of his hands to a small area around his waist. He is placed in a visiting area with no outside windows, no restrooms, and no available drinking water. The visits are through glass, and the inmate is expected to talk over a phone to his visitors with his hands cuffed to his waist. The visitors have access to a drinking fountain and restroom, but nothing else. Young children aren't allowed to bring any items with them, and there is absolutely nothing for them to do on a visit that lasts about three hours. General population (every inmate in Ohio except death row and disciplinary) visitors and inmates are allowed full contact with visitors, vending machines, games and books for young children, play rooms for young children, visits on weekends, and longer visiting hours, among other things. Family members of death row inmates are required to miss school or work to visit their family members, while general population are allowed to visit seven days a week up to about eight hours a day.

Complaint.

Preliminarily, this Court notes that the United States Supreme Court clearly established that when non-prisoners allege constitutional violations (such as the claims raised in this case), deference must be given to prison administrators in maintaining a secure and orderly prison system. Thornburgh v. Abbott, 490 U.S. 401, 410 n. 9 (1989)("any attempt to forge separate standards for cases implicating the rights of outsiders is out of step with" Supreme Court case law); see also Brewer v. Wilkinson, 3 F.3d 816, 823 (5th Cir. 1993), cert denied 510 U.S. 1123 (1994)("the Thornburgh court stressed...that even though prison regulations or practices might burden the fundamental rights of 'outsiders,' the proper inquiry is whether the regulation or practice in question was reasonably related to legitimate penological objectives.") Put simply, the same constitutional standards of review for prisoners apply to non-prisoner plaintiffs when determining whether constitutional rights of non-prisoner plaintiffs have been violated.

As the Report and Recommendation generally highlights, courts must give deference to prisons to maintain institutional security. Bell v. Wolfish, 441 U.S. 520 (1979). In maintaining institutional security, "[i]t is clear that a prisoner does not have a due process right to unfettered visitation.... A fortiori, a citizen simply does not have a right to unfettered visitation of a prisoner that rises to a constitutional dimension." Spears v. Sowder, 71 F.3d 626, 629-30 (6th Cir. 1995).

In Overton v. Bazzetta, 539 U.S. 126, 131-32 (internal citations and quotations omitted), the United States Supreme Court stated:

> We have said that the Constitution protects certain kinds of highly personal relationships. And outside the prison context, there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents.
>
> This is not an appropriate case for further elaboration of those matters. The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

> We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.

The non-prisoner plaintiffs assert, as underlying claims, violations of the Fourteenth and Eighth Amendments of the United States Constitution. Under the non-prisoner plaintiffs' Fourteenth Amendment claims, the non-prisoner plaintiffs assert a violation of the Equal Protection Clause because the non-prisoner plaintiffs are "treated as if they had committed some crime" because of the restrictions instituted with death-row inmate visits. The non-prisoner plaintiffs also allege a violation of their fundamental liberty interest in maintaining intimate contact.

This Court concludes that it is unlikely that the non-prisoner plaintiffs will succeed on the merits of their Eighth Amendment and Fourteenth Amendment claims. After reviewing the non-prisoner plaintiffs allegation of "cruel and unusual punishment" as proscribed by the Eighth Amendment, the record indicates that the non-prisoner plaintiffs were not subjected to criminal prosecution, which restricts their ability to raise a cruel and unusual punishment claim. See City of Revere v. Massachusetts General Hospital, 436 U.S. 239, 244 (1983)("Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions.")

This Court now turns to the substantive Due Process and Equal Protection claims asserted by the non-prisoner plaintiffs. Cf. Bazzetta v. McGinnis, No. 04-1823 (6th Cir. Nov. 28, 2005)(discussing a procedural Due Process challenge to a visitation procedure). In Turner v. Safley, 482 U.S. 78, 89-91 (1987), the United States Supreme Court held that four factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: (1) whether the regulation has a valid and rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives to the regulation.

In Overton, the Court affirmed a prison regulation that limited visitation privileges to

qualified clergy, attorneys on business, and persons on an approved list, which could include an unlimited number of family members and 10 others. Minor children were not permitted unless they were the children, stepchildren, grandchildren or sibling of the inmate. The regulation also required that a child visitor be accompanied by a family member of the child or inmate. In reaching its conclusion, the Court analyzed each restriction. Beginning with the restrictions on visitation by children, the Court generally stated:

> we conclude that the regulations bear a rational relation to MDOC's valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct or from accidental injury. The regulations promote internal security, perhaps the most legitimate of penological goals...by reducing the total number of visitors and by limiting the disruption caused by children in particular. Protecting children from harm is also a legitimate goal.

539 U.S. at 133.

In the instant case, the plaintiffs claim that the restrictions placed on death-row inmates during visiting hours are too harsh to serve a rehabilitation interest. Specifically, the plaintiffs claim that belly chains, talking to family members on a phone through glass, lack of intimate contact, no vending machines, and lack of daycare for children have no valid and rational connection to a legitimate government interest. Based on the United States Supreme Court's opinion in Overton, however, this Court disagrees. Primarily, this Court notes that internal prison security measures such as belly chains, talking to non-prisoners through glass, no vending machines, no toys for children and no intimate contact serve the most legitimate of penological goals. While "general population" inmates may be afforded less visiting restrictions than death-row inmates, death-row inmates could pose a greater security risk to prison personnel. Additionally, death-row inmates may pose a greater flight risk. Therefore, deference must be given to prisons to protect personnel and non-prisoners when visiting a corrective institution. While the plaintiffs may claim their rights are violated because of the visiting restrictions set in place for death-row inmates, some limits on freedom of association with non-prisoners is compatible with incarceration, and curtailment of that freedom must be expected in the prison context. See id. at 131. In the context of death-row inmate visitation restrictions, this Court

6

must accord deference to the professional judgment of prison personnel, who bear the responsibility for defining the legitimate goals of the corrective system and for determining the most effective means to accomplish them. See id. at 132.

Having determined that the challenged restrictions bears a rational relationship to a legitimate penological interest, this Court also concludes that the plaintiffs have alternative means of exercising the constitutional right they seek to assert. In Overton, the Court noted that letter writing and phone calls are reasonable alternative means in communicating with non-prisoners barred from visiting. Id. at 135. The instant case is one step removed from that factual situation because the plaintiffs still have the opportunity to "associate" during their visiting hours; it just appears that the restrictions in place are not the most comfortable restrictions possible.

Accordingly, given the substantial deference allowed to prison administrators, this Court concludes that it is unlikely that the non-prisoner plaintiffs will be successful on the merits of their Eighth and Fourteenth Amendment claims in this case.

B.

Next, the plaintiffs argue that the magistrate erroneously concluded that there would be no injury if the injunction was denied. Specifically, the plaintiffs state:

> The Plaintiffs seek to enjoin Defendants from further harming Plaintiffs with their current procedure at Mansfield Correctional Institution. The Defendants are subjecting Plaintiffs to a myriad of restrictions that are currently doing them harm. The [p]urpose of the injunction at issue is to prevent this harm from being permanent, which will likely be the case if the inmate is allowed to be transferred.

Plaintiffs' Objection at 3. Additionally, the plaintiffs argue that there is an injury because "security concerns" is not a sufficient justification for transferring Mr. Conway from Mansfield to the Ohio State Penitentiary. Id. at 3-4.

Preliminarily, this Court reiterates that prisoner-plaintiffs and non-prisoner plaintiffs do not have a constitutional right to unfettered visitation. See e.g., Spears v. Sowder, 71 F.3d at 629-30. As stated, *supra*, deference must be given to prisons when placing physical restrictions on Mr. Conway and other death-row inmates during visitation. Because this Court determined,

based on the record, that the visitation restrictions are not likely to amount to a constitutional violation, there can be no identifiable injury in the visitation context itself. Therefore, this Court must examine whether transferring Mr. Conway from Mansfield to Youngstown, which is at issue in the injunctive motion, will place additional visitation restrictions on Mr. Conway that could amount to a constitutional violation.

In Wilkinson v. Austin, 125 S.Ct. 2384, 2395 (2005), the United States Supreme Court stated that the living conditions at the Ohio State Penitentiary, which included a prohibition of almost all human contact and limited exercise, may not individually give rise to a constitutional violation. The Court did note, however, that the living conditions, in their aggregate, did impose an atypical and significant hardship within the correctional context. Id.

In the case before this Court, it appears from the complaint that the plaintiffs claim that the visitation restrictions in Youngstown are "as harsh, or worse, than the current visiting facilities" in Mansfield. Again, as noted in the complaint, the current visitation restrictions at Mansfield include, *inter alia*, belly chains, separating glass, no physical contact, and no vending machines. The record does not indicate, however, how the visiting restrictions at the Ohio State Penitentiary will differ from those current restrictions at Mansfield Correctional. Making a bold assertion that the Ohio State Penitentiary's visitation restrictions would be "as harsh, or worse" is not sufficient evidence for this Court to identify an injury for purposes of issuing an injunction. As the Report and Recommendation suggests, "unlike Austin where the prisoner detailed stark examples between their current prison and the Ohio State Penitentiary, this Court does not have any evidence that visiting hour restrictions will differ from one prison to the next." Report and Recommendation at p. 6.

In sum, because there is no evidence of how visitation restrictions will differ at Youngstown than in Mansfield, this Court cannot conclude that Mr. Conway will face any injury different from the alleged injury he claims now.

C.

Additionally, the plaintiffs argue that the Report and Recommendation erroneously cited a case currently pending in the United States District Court for the Northern District of Ohio. The plaintiffs claim that case, Austin v. Wilkinson, is based on different constitutional challenges

8

than those raised here. A review of that case, however, reveals that the underlying premise is the same: death-row inmates filed suit to prevent the transfer of all death-row inmates to the Ohio State Penitentiary in Youngstown. While, in the instant case, Mr. Conway is attempting to prevent the transfer from Mansfield to Youngstown because the visitation restrictions at Youngstown are as "harsh, or worse" than those at Mansfield, the inmates in the Northern District are trying to prevent the transfer because the general confinement at Youngstown, versus their current confinement, poses an "atypical and a significant hardship."

This Court notes that visitation restrictions could reasonably fall within the general challenges raised by all death-row inmates in the Northern District case. The Court is persuaded that the injunction, if issued, will cause substantial harm to others and adopts the reasoning of the Report and Recommendation that differing results may occur in both of these litigations. The Court notes, however, that this is just one factor in a four factor balancing test.

D.

In the plaintiffs' final argument, the plaintiffs contend that the Report and Recommendation failed to take into consideration the arguments presented in the plaintiffs' memorandum in opposition to the defendants' motion to dismiss as well as the plaintiffs' second motion for a temporary restraining order and preliminary and permanent injunction.

First and foremost, this Court will not address the arguments made by the plaintiffs in their memorandum in opposition to the defendants' motion to dismiss. The motion before this Court concerns the issuance of injunctive relief. When the time is appropriate, this Court will consider the arguments of the plaintiffs and the defendants in ruling on the motion to dismiss.

Turning to plaintiffs' second motion for a temporary restraining order and preliminary and permanent injunction, this Court finds that the plaintiffs fail to raise any new arguments beyond the arguments raised in the plaintiffs' first motion for an injunction. Accordingly, plaintiffs' second motion for a temporary restraining order and preliminary and permanent injunction is denied.

III.

In sum, this Court adopts the Magistrate Judge's Report and Recommendation and concludes that the plaintiffs' arguments in the objection are unpersuasive. Thus, plaintiffs'

motion for temporary restraining order and preliminary and permanent injunction (doc. #2) is DENIED. Furthermore, because all of the plaintiffs' arguments have been addressed in the Report and Recommendation and this Order, and the plaintiffs have failed to raise new arguments in their second motion for injunctive relief, plaintiffs' second motion for temporary restraining order and preliminary and permanent injunction (doc. #10) is DENIED.

Date: 12-6-2005

Edmund A. Sargus, Jr.
United States District Court